**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JOSE CERVANTES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 11 C 8185** |
| v. ) | |
| ) | **Judge Joan H. Lefkow** |
| **CATERPILLAR INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Jose Cervantes filed this lawsuit against Caterpillar Inc. ("Caterpillar") alleging religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*[1] Presently before the court is Caterpillar's motion for summary judgment on Cervantes's complaint.[2] For the reasons that follow, Caterpillar's motion [#16] is granted.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To determine whether any genuine issue of fact exists, the court must pierce the pleadings

---

[1] Cervantes's complaint alleges that he was discharged in retaliation for his requested religious accommodation. He makes no mention of retaliation in his response to Caterpillar's motion for summary judgment. His EEOC charge also does not raise a retaliation claim. Because the charge "makes no mention of a complaint of discrimination, to whom the complaint was made or what adverse action allegedly resulted from the complaint" and does not check the box for retaliation, Cervantes cannot pursue a retaliation claim. *Peters* v. *Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002).

[2] The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this district under 28 U.S.C. § 1391(b). Cervantes exhausted his administrative remedies and timely filed his Title VII claim within 90 days of receiving a notice of right to sue. *See* 42 U.S.C. § 2000e-5(f)(1); *Conner* v. *Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee notes (1963 amend.). While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## BACKGROUND[3]

### I.     Cervantes's Employment at Caterpillar

Cervantes, who is Seventh Day Adventist, began working as a painter at Caterpillar's Aurora, Illinois facility in November 2004. As a painter on the paint line in Building H of Caterpillar's Aurora facility, he painted Caterpillar wheel loaders and hydraulic excavators in Caterpillar's standard yellow and black colors. The paint line functions like an assembly line, with employees having specific jobs along the line. Five employees work in the main paint booth, with two applying pre-paint or primer, two applying paint from the floor, and one applying paint from a carrier to the top of the machines. Certain final paint details are completed

---

[3] The facts in the background section are taken from the parties' Local Rule 56.1 statement of facts and construed in the light most favorable to Cervantes. Caterpillar has moved to strike numerous of Cervantes's additional statements of fact and have improperly responded to statements admitted. Failure to comply with Local Rule 56.1 in responding to a party's statement of facts results in admission of those facts. *See Smith* v. *Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *McGuire* v. *United Postal Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraphs with citations to supporting evidence in the record constitutes an admission."). In accordance with its regular practice, the court has considered the parties' specific objections and responses and has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of this motion.

from the APA booth, which is staffed by two employees, one on the floor and one in a carrier. Once the machines leave the APA booth, they are inspected for defects. Recognized defects include runs or sags, lack of coverage, and overspray. If defects are found, they are written up and repaired in the ready to ship area.

Cervantes began at Caterpillar on the second shift, moving to the first shift in mid-2005. He worked in the APA booth, the main booth (including in the carrier position), and the ready to ship area. Caterpillar admits that Cervantes was one of the best painters it employed.

## II.   Cervantes's Work Performance History

As a Caterpillar employee, Cervantes belonged to United Automobile Aerospace and Agricultural Implement Workers of America, Local Union 145 (the "union"). A collective bargaining agreement ("CBA") governed the terms and conditions of Cervantes's and union members' employment with Caterpillar. That agreement provides for progressive discipline, beginning with a verbal warning and progressing to an indefinite suspension that may be converted to discharge.

Although Cervantes was one of Caterpillar's best painters, his disciplinary record was not entirely clean. In March 2007, he received a warning for poor attendance. In June 2007, he served a one-day suspension for additional attendance issues. Cervantes also received a warning for unsatisfactory attendance in August 2008. Additionally, in August 2007 and September 2008, Cervantes was suspended for three days for sleeping on the job. He filed a grievance regarding one of these suspensions, resulting in the suspension being overturned.[4]

---

[4] The record is not clear as to whether the grievance related to Cervantes's 2007 or 2008 three-day suspension. Cervantes's testimony suggests that the 2008 suspension was overturned based on the
(continued...)

Cervantes's disciplinary issues continued into 2010. On February 23, 2010, Cervantes received a warning for unsatisfactory attendance. On June 8, 2010, he received a one-day suspension for attendance.[5] On August 6, 2010, Cervantes received a three-day suspension for entering the security gate at the same time as another employee, a prohibited action.[6]

### III. Cervantes's Religious Beliefs and Caterpillar's Accommodations

As a Seventh Day Adventist, Cervantes is precluded from working during the Sabbath, from sundown on Friday to sundown on Saturday. When transferred to the first shift in 2005, Cervantes informed his then-supervisor, Leon Milsap, that he was a Seventh Day Adventist and asked Caterpillar that it let him keep his Sabbath. Cervantes thereafter never worked during the Sabbath. His supervisors did, however, often ask if he would work on Saturdays and offer him overtime on Saturdays. Cervantes admitted that this was required under the CBA. Cervantes also testified that his coworkers on the paint line would occasionally comment on his not working on Saturdays, but he never complained to Caterpillar about these comments despite finding them aggravating.

### IV. Events Leading up to Cervantes's Termination

In October 2010, Caterpillar implemented changes to the paint line in Building H where Cervantes was working. Marcy Stewart, the Group Manager for the paint line effective

---

[4](...continued)
supervisor he identifies as having given him the suspension he appealed. The issue is immaterial to resolution of this motion.

[5] None of the documented attendance issues related to Cervantes missing work because of his religious beliefs.

[6] The August 2010 suspension was initially for an indefinite period of time but then was converted to a three-day suspension.

4

October 1, 2010, decided to cross-train employees based on a best practice that another paint line at the Aurora facility was using. Cross-training allowed employees to be trained to perform in more than one position. This served various purposes, including ensuring that if one person were absent, someone else could do that person's job. As part of this exercise, Stewart, along with Jeremy Padgett, a new supervisor on the paint line in Building H, decided to switch Cervantes, who was working in the carrier position in the main booth, with Eusebio Jacobo, who was working in the APA booth. The switch was to be temporary, allowing Jacobo to learn Cervantes's carrier position so that he could fill in on Saturdays when Cervantes did not work. Cervantes told Padgett that he knew how to perform the APA booth position and thus he did not receive any specific training for the APA booth position at the time of the transfer.

Shortly after Cervantes's transfer to the APA booth, Stewart received information from the predelivery inspection department that it was finding an increased number of sags in the areas that Cervantes was painting. Stewart discussed this with the paint line supervisors, Padgett and Manuel Herrera, and asked them to follow up with Cervantes. Cervantes complained that his paint gun was defective. Although no defect was found, the tip of Cervantes's paint gun was replaced as a precautionary measure. This did not resolve the problem, however, and Stewart continued to receive complaints over the next two days from the predelivery inspection department. Stewart determined that the complaints were not all coming from one person and confirmed for herself that there were defects on more than one machine. Stewart had not known Cervantes to make such mistakes and testified that she was surprised at what she found.

In addition to the paint defects, Cervantes's supervisors noticed that Cervantes was reluctant to work. Padgett found Cervantes sitting in the corner of the booth drawing instead of

helping his coworker when the paint line was down as he should have been. Cervantes told Padgett that it was not his job to help the coworker but, after some discussion, he relented. Padgett and Stewart both also had the impression that Cervantes was not happy with the transfer.

Confronted with these problems with Cervantes, Stewart spoke with her supervisor, Rick Hill, expressing her belief that Cervantes was acting deliberately in protest of his transfer to the APA booth. Together, Stewart and Hill determined that Cervantes's actions merited disciplinary action. As Cervantes had been suspended in August 2010 for three days, the next step in the progressive disciplinary system was an indefinite suspension, which went into effect on October 21, 2010. Pursuant to the CBA, Patrick Ryan, who was Caterpillar's value stream manager, and Jayme Koller and Ken Krska, who worked in Caterpillar's labor relations department, subsequently met with Cervantes and his union representative to discuss the suspension. After the meeting, Ryan, who was unaware of Cervantes's religious beliefs, along with Koller and Krska, decided to convert the suspension to a discharge based on their conclusion that Cervantes was deliberately causing defects. The discharge was effective December 6, 2010.

## ANALYSIS

Cervantes claims that Caterpillar discriminated against him in violation of Title VII by terminating his employment because he refused to work on Saturdays for religious reasons. Title VII prohibits employers from discriminating against an employee based on the employee's religion and requires employers to make reasonable efforts to accommodate an employee's religious practices. *Porter* v. *City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012). A plaintiff claiming religious discrimination can prove his case under the direct or indirect method of proof.

*Id.* at 954. Cervantes makes no attempt at setting forth a *prima facie* case under the indirect method, so the court will evaluate his claim only under the direct method.

To survive summary judgment under the direct method, Cervantes must present direct or circumstantial evidence that would allow a jury to infer that his termination was motivated by discriminatory intent. *Dickerson* v. *Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The required causal connection may be shown through either direct evidence (*i.e.,* a smoking gun admission by the relevant decisionmaker that Cervantes was terminated because he was a practicing Seventh Day Adventist and refused to work on Saturdays for that reason) or through "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman* v. *Bd. of Educ. of the City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011) (citations omitted). "The convincing mosaic of circumstantial evidence may include suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel* v. *TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). "Circumstantial evidence under the direct method . . . must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." *Venturelli* v. *ARC Community Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003).

I.  **Relevant Decisionmakers**

"A decisionmaker is the person responsible for the contested decision." *Rogers* v. *City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003) (quotations omitted). Here, the ultimate decisionmaker as to Cervantes's termination, Ryan, was unaware of Cervantes's religious

beliefs. But Ryan is not the only relevant decisionmaker to the court's analysis; Stewart and Hill determined that Cervantes should be placed on indefinite suspension, an adverse employment action when considered in conjunction with Cervantes's termination. *See Meade* v. *Kroger Ltd. P'ship I*, 858 F. Supp. 2d 977, 988 (N.D. Ind. 2012) (no dispute that indefinite suspension and subsequent termination subjected plaintiff to an adverse employment action). Thus, the court will consider whether any of these individuals acted for a prohibited reason in indefinitely suspending and terminating Cervantes. As with Ryan, Cervantes has adduced no evidence that Hill was aware of Cervantes's religious beliefs or the accommodation he had requested as a result. Thus, Cervantes's argument of retaliatory animus on the part of Hill and Ryan "relies entirely on speculation," for there is "[n]o affirmative evidence that suggests that [they] were even *aware* of the plaintiffs' discrimination complaints before they [took the adverse actions]." *Brown* v. *Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). The record does reflect that Stewart was at least aware that Cervantes did not work on Saturdays. Construing the facts in the record and drawing all reasonable inferences in Cervantes's favor, the court will proceed on the basis that Stewart knew that Cervantes did not work on Saturdays in observance of the Sabbath as a Seventh Day Adventist.

Cervantes also argues that the court should consider Herrera's alleged anti-religious animus under a cat's paw theory of liability. Under a cat's paw theory, an employer may be liable for employment discrimination if a supervisor "performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and . . . that act is a proximate cause of the ultimate employment action." *Staub* v. *Proctor Hosp.*, --- U.S. ----, 131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011) (footnote omitted).

According to Hercle Brown, a part-time supervisor and quality analyst working at Caterpillar in 2010, Herrera was aware of Cervantes's religious beliefs. But even if that is taken as true, Cervantes has failed to adduce evidence to support his cat's paw theory that Hill, Ryan, or Stewart were influenced by Herrera in deciding to indefinitely suspend and terminate Cervantes. *See Cook* v. *IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) ("In employment discrimination law the 'cat's paw' metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has not discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action.").

## II.    Direct Evidence of a Causal Connection

Cervantes claims that Stewart and Padgett made statements that the switch in positions was due to Cervantes's not working Saturdays that serve as direct evidence of discriminatory intent. For example, Cervantes testified that Padgett told him he was being transferred because he did not work on Saturdays and that Caterpillar needed someone to train in his position to cover for Cervantes when he was absent on Saturdays. Cervantes Dep. 54:19–55:3. Even if these statements could be construed as evidencing discriminatory animus instead of an attempt to ensure that operations were not interrupted because of steps Caterpillar was taking to accommodate Cervantes's religious beliefs, they do not prove Cervantes's claim or even create a genuine issue of fact. For statements to be direct evidence of a causal connection, they must "relate to the specific employment decision in question." *Randle* v. *LaSalle Telecomms., Inc.*, 876 F.2d 563, 569–70 (7th Cir. 1989) (collecting cases); *see also Rudin* v. *Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) (direct evidence does not rely on inference or

9

presumption). Because the materially adverse employment action here is Cervantes's indefinite suspension and subsequent termination—not his temporary transfer from the main booth to the carrier booth—the statements by Stewart and Padgett that they wanted to temporarily move Cervantes because he did not work on Saturdays cannot be considered as direct evidence of a causal connection between his religious beliefs and the adverse action.[7]

### III. Circumstantial Evidence of a Causal Connection

Alternatively, Cervantes argues that he has presented circumstantial evidence of a causal connection because Caterpillar's reason for his suspension and termination was pretextual. "[C]ircumstantial evidence of pretext offered as part of a direct method claim 'bears an eerie similarity to the evidence required under the indirect method.'" *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 973 n.2 (7th Cir. 2012) (quoting *Volovsek* v. *Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003)). To show pretext, Cervantes must demonstrate that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *E.E.O.C.* v. *Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006). "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] 'lie, specifically a phony reason for some action.'" *Argyropoulos* v. *City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (quoting *Sublett* v. *John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006)). "An employer's explanation can be 'foolish or trivial or even baseless' so long as it 'honestly believed' the proffered reasons for the

---

[7] Additionally, because Padgett was not the decisionmaker, any alleged discriminatory animus he had would not impose liability on Caterpillar, as discussed above.

adverse employment action." *Culver* v. *Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005) (quoting *Hartley* v. *Wisc. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997)).

Stewart and Hall determined that the next disciplinary step—indefinite suspension—was appropriate based on their evaluation that Cervantes was intentionally withholding work effort and causing multiple defects despite being more than capable of better work. Cervantes maintains that this was not true, based on his own assessment of his performance and Brown's testimony. Cervantes claims that any defects were due to a defective paint gun and that the defects were remedied after the paint gun tip was replaced. But his own personal view as to his job performance does not create a question of fact regarding whether he was satisfactorily performing his job or support a finding of pretext. *See Luks* v. *Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006) ("[Plaintiff's] own opinion that he was doing the job satisfactorily is beside the point. His assertions as to purely factual matters within his personal knowledge might establish questions of fact on those points, but the relevant question is not whether the criticisms of his performance were right or wrong but whether his supervisor honestly believed them."); *Millbrook* v. *IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) ("[A]n employee's perception of his own performance . . . cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities." (citations omitted) (internal quotation marks omitted)). Similarly, Brown's testimony that he did not observe defects in some of the photos he was shown during his deposition and that Cervantes should have received additional training does not create a material issue of fact as to whether Caterpillar fabricated the reason for Cervantes's termination, for Brown had no role in the decisionmaking process. *See Anderson* v. *Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994) ("The mere

11

submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory . . . does not create a material issue of fact.").

What is relevant is what the decisionmakers believed, and Cervantes has presented no evidence to create an issue of fact as to whether the decisionmakers did not honestly believe that he was intentionally underperforming. *See Everroad* v. *Scott Truck Sys., Inc.*, 604 F.3d 471, 478 n.2 (7th Cir. 2010) ("The decisive question is whether [the employer] genuinely believed that [the employee] had been insubordinate . . . . So long as [the employer] genuinely believed in the truth of [the] stated reason for the decision, that reason is not pretextual."). In fact, Cervantes even acknowledged that Stewart held this belief about his performance, only disputing its accuracy. *See* Cervantes Dep. 90:23–24 ("[T]hey assumed I was doing it on purpose."). This undercuts any argument of pretext, even assuming that the criticism was unfair. *Ptasznik* v. *St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) ("An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held.").

In another attempt at demonstrating pretext and a causal connection, Cervantes argues in cursory fashion that he was disciplined more harshly than other employees who allegedly performed more poorly than Cervantes but were not subject to discipline. But his evidence to support this proposition is lacking; he has not identified any employees treated more favorably or even provided specific instances of similar defects where the employee causing them was not subjected to disciplinary action for the defect. *See Everroad*, 604 F.3d at 479 ("When a plaintiff claims to have been disciplined more harshly than other, similarly situated employees based on a prohibited reason, the plaintiff typically must demonstrate that the other employees 'engaged in

similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."); *cf. Coleman* v. *Donahoe*, 667 F.3d 835, 857 (7th Cir. 2012) (finding that plaintiff's comparator evidence that two identified employees broke the same rule as she did but received more lenient punishment, when combined with additional circumstantial evidence, was sufficient to defeat summary judgment on the pretext issue). The time to present such evidence was in his response to Caterpillar's motion for summary judgment. Cervantes's failure to marshal appropriate evidence lending itself to an inference of discriminatory intent leaves no disputed issue of fact. *See Goodman* v. *Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case." (citations omitted)).

## CONCLUSION

Caterpillar's motion for summary judgment [#16] is granted. This case is terminated.

Dated: June 25, 2013                                Enter: _____
                                                    JOAN HUMPHREY LEFKOW
                                                    United States District Judge